The last case for argument this morning is 1727-28, District of South Dakota, United States v. Terance Morice Highbull. We are asking that the court reverse and remand the district court's holding, failing to suppress the phone of Morice Highbull taken from his phone, taken from his car by the mother of his child, Michelle Janice. The district court concluded that this was not, in fact, a government agency search, but was a private party search. So what's our standard of review on determining agency status? That is de novo. You are reviewing the district court's conclusion that this is not a private party search, it's a government agency search, or vice versa, de novo. The historical facts underlying that are reviewed for clear error. So agency status, you think, is a legal conclusion, not a factual? I do. I do. And I think the cases are in line with that. Now, what's funny then, Judge Gunder, is you get in the middle, right, these criteria that the court has looked at on intent to assist or knowledge or acquiescence. And I thought about that question, and I think those are kind of the funny mixed questions of fact and law. Clearly, findings of specifically an officer said this, an officer did this, are true factual findings reviewed for clear error. And the ultimate conclusion to suppress or not suppress is a legal conclusion. I think what's important to remember in this case, though, is at some level it doesn't matter, because there was no dispute about the facts. For example, if we look about the intent to assist law enforcement for Ms. Janice, the only evidence addressing that question comes directly from Ms. Janice. In the form of the officer's body cam and audio recording in his vehicle contemporaneous to the search. What about some of the conclusions by the district court that, taking inference as to what her intent may have been? Is that too a factual finding? In other words, it seems to me we don't have, obviously we've got the audio, that's mostly what it is. But there are inferences I think the district court made. Frankly, Judge Kelly, I think they're speculation, not inferences. The magistrate judge goes so far as to acknowledge their speculation. She says these are simply speculations about other motivations. What I would tell you I think that it doesn't matter in this instance is even if we assume that the specific criteria, intent to assist law enforcement, request by law enforcement to assist, are factual findings. The district court's conclusion was clearly erroneous because it went directly against the only evidence in both instances. As to the request by law enforcement, Officer Mattson, who is the officer on the scene, testified at the suppression hearing at page 53, line 15. He asked Ms. Janice, do you have the phone with the intent to elicit the phone? He acknowledges that his question is in fact a request to obtain the phone. That's the only evidence on that point. Do we look at how he testifies or how Ms. Janice would have heard it as an initially private actor as to whether she would perceive that to be a request or simply a question as to the whereabouts of the phone? Again, Judge Kelly, I think that if you're going to ascertain what that statement by the officer is, you have to look at what the officer says he intended it to be. He's the best gauge of what he's doing when he says, do you have the phone? And he says, I want her to get the phone. But if you assess her hearing of it, again, the only evidence is she took it as a request because she immediately goes to the vehicle and begins searching and comes out with the phone. So the only evidence of the intent of the question comes from the officer who says my intent is to elicit the phone. The only evidence of how it's heard by Ms. Janice is her reaction. And she immediately goes to the car with Officer Mattson standing five feet away, searches around, gets the phone and gives it to him. And again, on her intent as to whether she wants to assist law enforcement or not, we have her contemporaneous statements. She says that she had her son call the police. At 9, hour 9, 40 seconds of video, she says I had my son call the police. She then says she wanted to sign a complaint against Mr. Heibel because he was in possession of naked pictures of her daughter. And that she had in fact been waiting for him to come home before she called the police. So again, the only evidence of what she was intending to do to involve law enforcement was to get Mr. Heibel arrested and prosecuted. She says that herself. Now, the district court did speculate. The district court says infer at one point, but the magistrate judge says speculate. And I think that's more accurate because there's just not any other evidence. The district court puts on the table other possible purposes. That maybe in fact that what Ms. Janice wanted to do was to avoid further abuse of her daughter. Or maybe what she wanted to do was to avoid public disclosure of the material on the phone. I would contend that one, factual findings directly against Ms. Janice's contemporaneous statements as to her purpose are clearly erroneous. But secondly, those are still law enforcement purposes. She still wants law enforcement to obtain the phone to arrest and prosecute Mr. Heibel. How do you tease that out? Because I think in your briefing you sort of talk about this idea that it's sort of one and the same. Helping law enforcement is helping yourself. When would a private actor seek out or turn over evidence to the police without wanting the police involved? How do you separate the personal and the investigative intent out in this when it seems like there's always got to be some of both? I think that's true. We're always a little bit mixed motivated as human beings. I think you could consider scenarios that could have been possible here, right? So if Officer Mattson is taking information from Ms. Janice and she says, hey, my bag is in the car or my phone's in the car, I'm going to go get it. And she's in there and she says, oh, here's his phone. She went in there with the purpose to get her material. Or they had a shared child who at one point Ms. Janice is trying to get back in their apartment to make sure that the child is okay. If that child had been in the car, in a car seat, and she says, I'm going to go get little Janie or Jimmy out of the car, again, her purpose, right? To protect her kid, to make sure the kid's okay. I think even in this instance, she at one point goes and just turns off the car. If maybe she just didn't want a car running in her driveway, more of a personal reason, a private reason. But here, again, she says, I called the cops to get him arrested. And the cop says, well, do you have the phone with the intent to elicit the phone? And she goes and gets it. I mean, I don't think you really have to tease it out because logistically everyone's intent and actions just lined up as a law enforcement purpose. I guess to me the question is, has she become an agent of the government? If it's her will to get him prosecuted, does that necessarily make her an agent of the government? It would be much nicer to get her if she were fully deputized and sworn in, right? That'd be super handy for all of us analyzing this, but that's not how it goes. I think under the criteria that the court has looked at, she effectively does. Because what we have to look at in these messy factual scenarios is the person's intent, which she says is to get him prosecuted, and law enforcement's request, and the officer says he wanted her to get the phone. And I would compare it in particular. To be an agent, though, isn't probably the most important thing that you act at the direction of law enforcement? None of the cases give greater weight to any of these factors than the other. I would say that if we really try and analyze that factor again, it does come down to the fact that Officer Mattson said, I asked, do you have the phone with the intent to have her get the phone, and she immediately went and got it under his supervision. It would be so much cleaner for all of us analyzing this if he said, I direct you as an agent of the state to go obtain this phone. I think he'd win. Yeah, yeah. I'd always love to change the facts. Life would be so much easier. But the reality is, that's not how we communicate in a lot of instances. And two, I mean, just as a practical matter, the officer's no dummy, right? Not going to say, I deputize you. Did she testify? She did not. She did not testify. This event took place almost two years before, and there was video audio of the event, so there's really nothing for her to add in her testimony other than what she'd already said. Might it be helpful if she said, well, I took that as a direction to go get it? And again, her actions, I think, showed that, that she immediately went to go get it. Because coming into it, she had the intent of getting him prosecuted, so she's naturally going to want to be as helpful as she can to get it prosecuted. It's a fine line. And I think, you know, I thought about that too, Your Honor, that what if she had gone in the car before Officer Mattson arrived and had the phone when he got there? Again, she has the intent. You wouldn't have knowledge and acquiescence, which no one disputed here. So you are always kind of balancing these out. So again, I think what's so important here that you compare and contrast to the Smith case and the Wiest case that the district court relied on is the evidence was uncontroverted. In your hypothetical, you'd agree you'd lose, don't you? The hypothetical that she- Went and got it before he got there. It's pretty bad for us, yeah. I mean, I think at that point, there's no knowledge, there's no acquiescence, there's no request by law enforcement. That's pretty tough to say that that person isn't acting pretty much as a private individual at that point. If I can just briefly, Your Honor, I would again highlight the district court relied extensively on the Smith case and the Wiest case. And if you contrast those cases to this one, again, in Wiest, you had conflicting evidence. You had law enforcement who said, I made a request to get evidence of a bank robbery. You had a private homeowner who said, I just went and got this guy's stuff and gave it because he got arrested there and I didn't want it anymore. And so the key thing there is those factual findings weren't clearly erroneous because the district court weighed out conflicting testimony. There's no conflicting testimony here. The same is true, ultimately, of the Smith case where FedEx has something pulled off the line. They're concerned about shipping contraband, which is a bad business model. And so the officer present says, hey, it's up to you whether you search or not. That's the extent of it. There's no indication by the officer that this was intended to get them to open the package. And here, that's the only evidence. And again, those factual findings weren't clearly erroneous. The difference between those cases and here is there is no conflicting evidence for the district court to weigh out. It all pointed to intent to assist law enforcement and to obtain the phone. Does the officer's subjective intent matter? Whether or not he wants the person to search, you know, I think it does in the sense that it tells you if that was a request. I mean, it gives you an indication of what he was trying to do when he said, do you have the phone? And he said he was trying to get her to get the phone and give it to him. I don't think it's a specific legal requirement, but I think it informs whether or not that was a request to assist. And if I may, I'd reserve the balance for my time. Very well. Thank you, and may it please the Court, my name is Ron Parsons on behalf of the United States. Mr. Parsons, do you agree with Mr. Fulton as to the standard of review on the agency question? I think that's essentially correct, Your Honor. The ultimate legal conclusion is review de novo and a motion to suppress. Is agency status an ultimate legal conclusion? I think ultimately it's a mixed question of fact and law, so ultimately I think it probably is review de novo. But, of course, all the facts and all the inferences are reviewed clearly erroneous. Since the Supreme Court in 1921 issued Birdell v. McDowell, which confirmed that the Fourth Amendment only applies to government actors, there have really only been a couple of Supreme Court cases that really touched on the issue of, well, how do you determine when a private actor might become a government actor? And the first was Coolidge v. New Hampshire, and there the detectives went to a house, it was a murder-kidnapping victim, and they asked whether there were any guns in the house. And the spouse, the wife, voluntarily turned over the guns after the request by the officers. And the Supreme Court said that the test is, in light of all the circumstances, must Mrs. Coolidge be regarded as having acted as an instrument or agent of the state. And they commented that the police were surely acting normally and properly when they asked her, as they'd asked everyone else in the investigation, including Coolidge himself, about whether there were any guns in the house. And the Supreme Court emphasized that the Fourth Amendment does not require the police to discourage citizens from aiding in their utmost to apprehend criminals. And they held that she was not a government actor in that case, even though the police were there, asked for the gun, and it was produced by Mrs. Coolidge. Very similar to what happened here. The police are called to the scene for a domestic disturbance. They have no idea why they're on the scene until they get there. Officer Mattson gets out, knows there's a domestic disturbance, and Ms. Janice says, I think there are nude pictures of my 13-year-old daughter on Mr. Heibel's cell phone, and I've seen them. And the officer says, well, do you have the phone? A natural, logical question. And she says, I don't know where it is. Then the district court made a specific factual finding that at the same time she walks over and goes into the car, he's then talking to his cover officer, who had just arrived on the scene, and dispatched during the 30 seconds or so that she was in the car. And all of a sudden, she has the phone and she hands it to him. In this case, her household calls law enforcement, and almost immediately she's talking about what ultimately is the subject of this prosecution. Doesn't that really lean toward a finding that that was her intent to help law enforcement? No. And, of course, there's tension between the Ninth Circuit and the rest of the country in terms of this dual purpose doctrine. The Ninth Circuit in Reed says, well, there can't be a dual purpose. If you're trying to get someone in trouble or if you're trying to protect your daughter in this situation, then that's the same as trying to help law enforcement. Okay. So let's go on the premise that that, as we discussed with co-counsel, most folks do have multiple motives, and it would be hard to find a case probably where you find purely one or the other. But in this case, she can't get her personal motive satisfied, as the court identified in the district court, without the help of the police. So she needs the police. Does that factor into this analysis? I think everything factors in. I mean, the test the Supreme Court has given and this court has adopted is that it's the totality of all the circumstances. Then how much? How much? I think in this case, very little, because this court has recognized in the Smith case and the Goodell case and other cases that there has to be some kind of not just their presence, passive observance, or even a willingness to take the fruits of whatever's produced. Courts have held that there has to be some kind of either direction or specific request or an objective manifestation of what the government wants. In order to answer the ultimate question, did the government participate enough in order to transform a private person into an agent of the government? And here, simply because she desires to protect her daughter and desires to do that by calling the police. Let's dig into that a little bit, because this is one of those situations where we do have an audio so we can all hear what she says, and she never says those things. I want to make sure that these images aren't disseminated. I want to protect my daughter. I want a final complaint against him. So just based on what we can hear, we don't have those other motives. And frankly, another inference could have been if she really wanted to protect her daughter, she would have acted much sooner. Well, and what she says is, I found nude pictures of my daughter on his cell phone, and she just turned 13. He was accused of raping her a year ago. He says this a little later. He was accused of raping her, and he said he didn't do it, and I didn't believe her at the time or him at the time. Didn't believe her at the time and believed him. So I don't think you – and this Court has recognized in Smith that the absence of evidence in Smith in particular, the Court held that the absence of evidence that assisting the police was her only or primary motive in itself justified a finding that the defendant did not meet its burden, and it has the burden here to prove that a private actor is transformed into an agent of the government. Objectively, what happened here? The police got on the scene. She said, I think there's a cell phone that has nude pictures of my daughter, and I've seen it. They said, do you have the phone? They didn't say, would you go look for the phone? They didn't say, would you go into the car to get the phone? They don't know where the phone is. They just asked, do you have it? And I think the description in the briefing that says that the officer admitted his purpose was to have her go get the phone is not accurate, and that's not what the district court found or the magistrate found or what's in the transcript. The question in the evidentiary hearing that's cited was, and you asked that question in order to secure the phone. And he said, correct. But to secure it doesn't mean he's asking her to go look for it or go into the car or act as the government's agent. If she has it, they're going to take it. And that's really all you can infer from that, as the district court found. And the district court made findings about the tone of the officer. There was no attempt at all found on the part of the officer to suggest what she should do. Very specific findings on those points. Open-ended question, a single question, no attempt to coerce or force or direct or even request. Do you have this information? Do you have the phone? And if the court would hold that that's enough to transform a private actor into a government agent, the Coolidge case would be abrogated. Asking the question, do you have this particular evidence that you've just described to me, if that can transform a private person into a government actor, then the Fourth Amendment has been expanded beyond Bordeaux versus McDowell. Far, far beyond it. The Reed case disturbs me a little bit. That's the Ninth Circuit case. I suggest it's an outlier. Because what they've done is they've taken the totality of the circumstances test where the key factor, as the Supreme Court pointed out in Skinner, is to what degree did the government participate. That's the word the Supreme Court uses in Skinner, which is the most recent and most helpful case on this direct question. To what degree did the government participate in the private party's activities? And here there's no participation in the private party's activities at all, other than presence. And the court, of course, has made clear that presence, knowledge, acquiescence, in and of itself is never enough. Never enough. But the Ninth Circuit has taken two of the factors that all courts consider, including this court, as one of many, and hammered it into a test that has to be satisfied. And in Reed they say if there is knowledge and acquiescence, and if the intent is to assist law enforcement, then you are a government actor. And there, that's not the test as far as I can see in any other circuit. You concede knowledge and acquiescence in this case? No, I don't. In specific, I mean, it depends on the extent you're asking. I can see that they were there, and he certainly was aware that she was walking to the car, but his testimony was that he doesn't know why she's going to the car at that point. There's some cross-examination. He says, well, I assume, I could have assumed that. But he's, as the court found, talking to a dispatch officer and the cover officer during that 30 seconds, and then she comes out and she has the phone. He didn't know, all right, and now I know she's going to get the phone from that car. He doesn't know that. Is there a video available of all this? There's a video, but video really only provides audio because the police car is pointed in a direction where you can't see when this is happening or what's happening when she's going into the car. But there are findings about the interaction between the officer. As soon as the door opens on the audio, you can hear the ding from the door opening, and at that moment he's talking to dispatch and talking to the cover officer. This is how the district court made those factual findings. The Reed case also completely rejects the dual-purpose doctrine that this court specifically has approved. And also, if you even wanted to give credit to the Reed case, there was some measure of participation in that case you could say by the government because that was a motel, and the owner of the motel called the police to the scene to stand guard while he went around, and they knew he was going to go around and rummage for any evidence he could find about drug activities. And the Ninth Circuit described the police participation in that case as being lookouts, which I think is kind of an insulting term, but you couldn't apply that here at all. There's no way you could find that Officer Mattson, who's there on a domestic disturbance, is there to serve as a lookout for Miss Janice as she's going into the car. What is your view, if any, on the relative weight that we give each of the factors that we consider? I think you give weight depending on what they show, according to the Supreme Court, about the degree of the government's participation in the private party's activities, as it said in Skinner. So to the extent that any particular factor, considering all the factors, reveals the ultimate question, which is the degree of the government's participation, then you give that factor greater weight, and that will depend on the case. But here, the fact that he asked the question, Do you have the phone that you just mentioned? That shows no degree of participation at all in her private activities in walking over to the car and opening the door and grabbing it. She didn't even know it was in the car. She thought she might go check. And, of course, he had fled the scene. He left the car running in the driveway with the keys in the ignition, and as soon as he saw the police, he was out the back door running. So he's fleeing. The car was registered to that address. The officer testified he believed that Mr. Heibel probably lived there, even though she had told him that he didn't. But the car registration indicated that that's where the car was registered to. So the officer has really no idea why she's going into the car for certain, doesn't know if she has consent to go into that car or not. He would have no idea. Yeah, you're right. You're right. He's distracted in that 30 seconds, but he admitted, yeah, I probably could have assumed she's going into that car to look for the phone. Yeah. But he doesn't know. None of the factual findings, and they say the facts are undisputed, so I accept that. All the factual findings the district court made, including the findings about what you can reasonably infer from objective facts, I think none of them have been shown to be clearly erroneous. The district court, Judge Schreier, in affirming it, specifically said these are very reasonable inferences, and they really mirror the Smith decision, Judge Wolman's decision in Smith, which is kind of the most detailed examination of the law here, which says in the ultimate holding was given the absence of evidence that Edwards, the private actor, was motivated solely or even primarily by the intent to aid officers, we conclude that the district court's factual findings are not clearly erroneous. So the absence of evidence showed they didn't meet their burden in that case. We respectfully ask that the court affirm the denial of the motion to suppress and thereby affirm this conviction. Thank you. Mr. Fulton, rebuttal? I would just quickly run down these three factors, which I agree are multiple factors that could be considered. On knowledge and acquiescence, at page 8 of the government's brief, it acknowledges that the officer was present and acquiesced in the search. That's the state of the briefing. On the intent, Your Honors, we're not asking the court to shift its jurisprudence on dual purpose. The fact, however, here is, as the magistrate judge acknowledged and the district court says, it's speculating or inferring about other purposes. The only evidence present is Ms. Janice's statements that she has a law enforcement purpose, that she wants Mr. Heibel arrested and prosecuted. Even as it relates to securing her daughter or the phone, that is dependent upon him being arrested and prosecuted. As it would relate, then, to the action at law enforcement request, I think, again, Reed is apt, setting aside the issue about the test and whether there's dual purpose or not. You had a call by a hotel manager for law enforcement to come intervene, just like you had a call here for law enforcement to come intervene. You had a search by a private individual as law enforcement stood by several feet away, just as Officer Mattson did here, with a knowledge that the search was going beyond any private purpose. In Smith, securing a hotel room against damage or anything like that. In this instance, securing Ms. Janice's personal property. The difference, again, between this case and the Smith case and the Wiest case is in those instances, the court affirmed as not clearly erroneous the district court's assessment of conflicting evidence and testimony.  You did stretch the testimony of the officer a little bit, didn't you, in your opening argument? That he wanted the phone obtained? No, Your Honor. He gets asked on cross-examination. You kind of put it that he wanted her to go get it. That's a little different than I asked her the question to secure the phone because if she had it in her hand, he would just secure it that way. She didn't have to go get it. What I, Your Honor, to be clear, the position I'm taking on his testimony is that he acknowledged in his question to her that his intent was for her to obtain the phone. No, his intent was to secure the phone, not for her to go obtain it. I guess, and I'm assuming over time if I can respond to that question, I don't, I guess, see a difference in that, that, I mean, secure, you can't secure something you don't possess. Well, that's the question. He doesn't know that she doesn't possess it. That's the point. If I can, Your Honor, just respond to that. He did know that. She had told him before that that she didn't have the phone. She had told him that that was Highbull's car and that the phone had pictures, and she acknowledged, I don't have it. He may have taken it. So he knew, the officer knew that she did not have it in her possession. Very well. We'd ask the Court to reverse the remand. Thank you. It's a good law school exam type case, so we will wrestle with it. The case is submitted. We appreciate your arguments today. That finishes our argument.